775 F.2d 1187
 249 U.S.App.D.C. 354
 PHOENIX HYDRO CORPORATION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Long Lake Energy Corporation, Intervenor.
PHOENIX HYDRO CORPORATION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Long Lake Energy Corporation, Intervenor.
 Nos. 84-1197, 84-1207.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 12, 1985.
Decided Nov. 5, 1985.
 
 Petitions for Review of an Order of the Federal Energy Regulatory commission.
 William R. Morgan for petitioners.
 Joshua Z. Rokach, Atty., F.E.R.C., Washington, D.C., with whom Michael E. Small, Atty., F.E.R.C., Washington, D.C., was on brief, for respondent.
 George M. Knapp, Washington, D.C., for intervenor Long Lake Energy Corp.
 Before J. SKELLY WRIGHT, TAMM*, and MIKVA, Circuit Judges.
 MIKVA, Circuit Judge:
 
 
 1
 A builder seeking to construct, operate, or maintain a hydroelectric generating facility must obtain a license from the Federal Energy Regulatory Commission ("the Commission"). Federal Power Act, 16 U.S.C. Sec. 791a et seq. (1982). Congress allows an exemption from this licensing requirement for some small power projects to be built at the site of an existing dam. Phoenix Hydro Corporation ("Phoenix"), which proposed to build a small power project in Phoenix, New York, is appealing the Commission's rescission of its earlier acceptance of Phoenix's application for an exemption. Phoenix also challenges the Commission's withdrawal of the company's application for a preliminary permit at the time that it accepted Phoenix's application for an exemption. Phoenix argues that this withdrawal deprived the company of the priority to which its preliminary permit application entitled it under the normal licensing procedure. For the reasons that follow, we uphold the Commission's decision that Phoenix was not entitled to an exemption. This determination, however, ought not prejudice or predetermine the hydroelectric plant builder's application for a preliminary permit. We therefore remand the case to the Commission to reinstate Phoenix's application for a preliminary permit with the priority it would have had on its own, considered independently from Phoenix's application for an exemption.
 
 I. BACKGROUND
 
 2
 The Oneida and Seneca Rivers flow together at Three Rivers, New York. The Oswego River flows north from the confluence of these two rivers. Two and a half miles north on the Oswego River, in Phoenix, New York, Phoenix Hydro Corporation proposed to construct a small hydroelectric power project at the southwest end of a dam in the river. The dam itself, located at the first of seven locks on the river between Three Rivers and Oswego, is owned by the New York State Department of Transportation (NYSDOT). Before Phoenix commenced construction, it duly filed an application for a preliminary permit with the Commission on September 2, 1981. On September 15, 1982, Phoenix also sought an exemption from licensing requirements under 16 U.S.C. Sec. 823a and 42 U.S.C. Sec. 7371, which allow exemptions from licensing for the construction and operation of small hydroelectric facilities in which the applicant owns all necessary water interests. On December 17, 1982, the Deputy Director of the Commission's Office of Electric Power Regulation ("the Director"), acting under a delegation of authority from the Commission granted by 18 C.F.R. Sec. 385.308, accepted Phoenix's exemption application for filing. However, the Director rescinded this acceptance on June 16, 1983, on the ground that Phoenix lacked the necessary property interests. Phoenix appealed the staff action, maintaining that the Commission had granted exemptions to two previous projects whose builders had property interests identical to those of Phoenix. The Commission denied Phoenix's appeal, and described the Director's earlier grants of exemptions to similar projects as erroneous precedents which it declined to follow. The Commission also found that Phoenix had submitted no documentary evidence of property rights, or of options to obtain such rights, in the project dam and impoundment. Phoenix then requested a rehearing, which the Commission denied on March 27, 1984.
 
 
 3
 The decision on Phoenix's application for a preliminary permit followed closely behind, and its result was ordained by, the exemption process. The Commission notified Phoenix on January 6, 1983 that its application for a preliminary permit was deemed withdrawn as of December 17, 1982, the date the exemption application was accepted for filing. When the Commission rescinded this acceptance, Phoenix's preliminary permit application was not reinstated. Nor was the application reinstated when the Commission denied Phoenix's appeal of the exemption on October 21, 1983. Phoenix filed a timely petition for rehearing of its appeal on November 19, 1983. After the thirty-day statutory maximum for filing a petition for rehearing had elapsed, 16 U.S.C. Sec. 8251, Phoenix on November 28, 1983 filed a supplement seeking a rehearing on the wholly separate issue of the withdrawal of the preliminary permit application, and arguing that the Commission should reinstate this application. The Commission granted rehearing on December 21, 1983 solely for the purpose of further consideration, but declined to consider Phoenix's petition to reinstate its preliminary permit application. The Commission then finally denied rehearing on March 27, 1984. This appeal followed.
 
 
 4
 II. THE COMMISSION'S DENIAL OF AN EXEMPTION TO PHOENIX
 
 
 5
 Petitioner first contends that the Commission improperly denied it an exemption. Phoenix's principal argument is that the Commission had previously granted exemptions to two small hydroelectric facilities on the same stretch of the Seneca River. According to Phoenix, these exemptions, Niagara Mohawk Power Corp., 19 FERC p 62,372 (May 28, 1982) ("NiMo"), and Seneca Hydroelectric Company, Inc., 18 FERC p 62,227 (Feb. 17, 1982) ("Seneca"), were granted to builders whose water and property interests were identical to those of Phoenix. Yet, Phoenix argues, the Commission ignored the precedential value of the NiMo and Seneca proceedings in denying Phoenix an exemption from licensing requirements.
 
 
 6
 Phoenix's claim raises two related, although separate, questions. First, did the Commission abuse its discretion in interpreting its regulations in a way that denied Phoenix an exemption? Second, regardless of the Commission's present interpretation of the applicable law and regulations, did the Commission's issuance of two prior exemptions, which the Commission now regards as erroneous, bind the Commission to issue the exemption to Phoenix?
 
 
 7
 The Federal Water Power Act, 16 U.S.C. Sec. 791a et seq. (1982), requires those who seek to construct a hydroelectric project to obtain a license from the Commission. 16 U.S.C. Sec. 817. Certain small power projects, however, are allowed to bypass the licensing proceedings and obtain an exemption. Section 408 of The Energy Security Act of 1980, 16 U.S.C. Sec. 2705(d), gives the Commission discretion to exempt projects at the site of "existing dams" which meet certain environmental requirements. In making these exemptions available, Congress intended to expedite the development of hydroelectric facilities and to shorten licensing procedures where possible. H.Conf.Rep. No. 96-1104, 96th Cong., 2d Sess. 276, reprinted in [1980] U.S.Code Cong. & Ad.News at 1743, 2171-72. To achieve this congressional purpose, the Commission has issued regulations which provide that:
 
 
 8
 If real property interests in any non-Federal lands would be necessary to develop and operate the proposed small hydroelectric power project, any person who has all of the real property interests in non-Federal lands necessary to develop and operate that project, or an option to obtain those interests, may apply for exemption of that project from licensing.
 
 
 9
 18 C.F.R. Sec. 4.103(b)(2)(ii).
 
 
 10
 The Commission has interpreted "project," as used in this regulation, to include "the impoundment and any associated dam, intake, water conveyance facility, power plant, primary transmission line, and other appurtenant facility, if ... a man-made impoundment is used for power generation." 18 C.F.R. Sec. 4.101(h)(i). Thus an applicant for an exemption at an existing dam must either own, or hold an option to obtain ownership interests in, the dam and the reservoir, as well as in the land for the proposed power plant. To demonstrate these possessory interests, the applicant must submit documentary evidence of the status of the applicant's property interests. Id. at Sec. 4.107(a).
 
 
 11
 Under these regulations, we cannot say that the Commission erred in refusing to grant Phoenix an exemption. Phoenix did not own or have an option to purchase all property interests necessary for the development and operation of its proposed project. Phoenix's application stated that it owned "the principal property rights, existing facilities, and water rights necessary" to develop its project. However, the dam and impoundment are properties owned by the New York State Department of Transportation. As Phoenix admitted, it would have to negotiate a final price with NYSDOT for the use of a small portion of the state's water rights. Phoenix had only the assurances of NYSDOT that the state agency's policy was to provide successful applicants with any New York State-owned real property or water rights necessary for the licensing of the project.
 
 
 12
 We find no error in the Commission's denial of an exemption under these circumstances. Phoenix's understanding with NYSDOT that the state would grant it any necessary state-owned real property or water rights is inadequate to satisfy the Commission's requirements for an exemption. Far from possessing or having an option to the dam and reservoir, Phoenix would have to pay consideration for an easement from the state to use these facilities.
 
 
 13
 The Commission's finding that this inchoate and unenforceable promise to convey an easement did not rise to a property interest necessary for the exemption was well within the exercise of its discretion. As the Commission explained, the extension of the ownership requirement to the dam and impoundment allows the Commission to enforce the regulatory scheme of exemptions mandated by the Energy Security Act. First, it favors for exemptions those applicants more immediately capable of capitalizing on exemptions--those with immediate possession of sufficient property interests; second, it enables the Commission to enforce the exemption holder's compliance with all exemption conditions pertaining to land; and third, it enables the Commission to conduct an enforcement action without having to join third parties over which the Commission may lack jurisdiction.
 
 
 14
 It is clear that Phoenix did not have an option or any similar rights in the property owned by the New York State Department of Transportation. NYSDOT had only indicated its willingness to negotiate with Phoenix. NYSDOT had made no promises or commitments about the outcome of any negotiations with Phoenix, nor about the length of time that these negotiations would require to reach an agreement. On these facts, the Commission properly found that Phoenix did not meet the requirement for an exemption that it have a property right or an option in all lands necessary to the proposed project, including dams and impoundments.
 
 
 15
 Phoenix also contends that, regardless of the Commission's interpretation of the statute and regulations at the time that it revoked its acceptance of Phoenix's application, the Commission is bound by its previous acceptance of similar exemption applications. Phoenix maintains that the Commission had granted exemptions to the NiMo and Seneca projects, which were located only a few miles downstream from Phoenix's proposed site. In rejecting this argument, the Commission acknowledged that the two successful applicants possessed no greater property interests in the respective dams that Phoenix Hydro had in the dam it would utilize. However, the Commission concluded, the result in those two cases was in direct conflict with the Commission's regulations and body of case precedent.
 
 
 16
 An agency is entitled to change its interpretation of a statute. As this Court held in Chisholm v. FCC, 538 F.2d 349, 364 (D.C.Cir.), cert. denied sub nom. Democratic Nat'l Committee v. FCC, 429 U.S. 890, 97 S.Ct. 247, 50 L.Ed.2d 173 (1976), "an administrative agency is permitted to change its interpretation of a statute, especially where its prior determination is based on error, no matter how longstanding." See also Columbia Broadcasting System, Inc. v. FCC, 454 F.2d 1018, 1026 (D.C.Cir.1971) ("We do not challenge the Commission's well established right to modify or even overrule an established precedent or approach ..."). The Commission's refusal to follow the two previous grants of exemptions is precisely such a correction of error. The previous two exemptions had been granted by the Director and were unreviewed by the Commissioners; they did not conform to the regulations. The Commission, in reviewing the Director's determination, properly corrected his error by rescinding his acceptance of Phoenix's application.
 
 III. PHOENIX'S PRELIMINARY PERMIT APPLICATION
 
 17
 Phoenix also maintains that it is entitled to reinstatement of its preliminary permit application. We agree and find that the Commission exceeded the bounds of its authority by automatically withdrawing Phoenix's preliminary permit application, and in refusing to reinstate the application when the exemption application was rescinded. The Commission's own regulations give the Commission no authority to withdraw a preliminary permit application in this situation. The regulations provide that any accepted preliminary permit or license application submitted by a person who later applies for exemption retains its validity and priority until the preliminary permit or license application is withdrawn, or the property is exempted from licensing. 18 C.F.R. 4.104(b). The regulations contemplate that only two events will have the effect of withdrawing the preliminary permit application: withdrawal by the applicant, or the applicant's receipt of an exemption. Mere acceptance of the application for exemption does not suffice to authorize withdrawal of the preliminary permit application.
 
 
 18
 The function of the preliminary permit application makes it clear that the application should not be withdrawn simply because an exemption application is accepted for filing. By filing a preliminary permit application, the applicant secures priority of application for a project license, during the time that the company determines the feasibility of the project and gathers documentary support for its license application. 44 Fed.Reg. 61329 (Oct. 25, 1979). By filing applications for both an exemption and a preliminary permit, the applicant reserves a rightful place in two lines. Of course, if the applicant receives the exemption, the license is no longer necessary and the agency's regulations validly authorize the removal of the applicant from its previously established priority for a project license application. However, if the exemption is denied (as it was in this case by the revocation of the Director's acceptance of the exemption application for filing), the applicant now must obtain a license and should not lose his place in the license line.
 
 
 19
 The placeholding functions served by simultaneous filing of a preliminary permit application and an exemption application makes FERC's reliance on Georgia Pacific Corp., 17 FERC p 61,174 (1981), inappropriate. In Georgia Pacific, the Commission stated, "When the Commission accepts a license application, it will simultaneously dismiss as impliedly withdrawn any permit application filed by the license applicant in the same proceeding." 17 FERC p 61,174 at n. 7.
 
 
 20
 This precedent is inapplicable to the withdrawal of a permit application when an exemption application is filed. As noted above, the purpose of a preliminary permit is to secure the permittee's priority of application for a license while the permittee gathers data to support the license application. See 16 U.S.C. Sec. 797; 44 Fed.Reg. 61329 (Oct. 25, 1979). Once the license application is filed and accorded the priority established by the preliminary permit, the preliminary permit application has no further use and may be withdrawn. In the present context, however, the acceptance of an exemption application for filing does not end the usefulness of a preliminary permit application. The preliminary permit application remains useful until the exemption is finally granted. If the exemption is denied, as it was in this case, the preliminary permit application remains in place and holds the priority of the applicant in the licensing proceedings, which have now become even more important to the applicant.
 
 
 21
 Because of this interdependence of the permit and exemption proceedings, the Commission's automatic cancellation of the preliminary permit application impermissably forces the applicant to choose between foregoing the possibility of an exemption at all, and staking all on the application for an exemption. If the builder does not apply for an exemption, it is assured of its proper priority in licensing proceedings. But if the builder does apply and the application is denied, it loses whatever priority it originally gained by a preliminary permit application. When the applicant fails to obtain the exemption, it not only has been forced to take the licensing route, but has lost its previously attained priority to apply for a license. This "all or nothing" approach is incompatible with the statutory plan to encourage exemption-seeking in appropriate cases; it penalizes unsuccessful efforts to obtain an exemption. The unsuccessful applicant for an exemption is placed in a worse position than the applicant who did not file for an exemption at all, but who filed a preliminary application and obtained licensing priority. Such unequal treatment discourages applications for exemptions and runs counter to Congress' stated policy of expediting the approval of small hydroelectric building projects.
 
 
 22
 Since Congress established the exemption process as an alternative route to obtain approval for hydroelectric projects, the Commission must preserve the independence of the preliminary permit and licensing process from the applicant's pending application for an exemption. Specifically, the Commission must preserve the priority of an applicant for a preliminary permit in the licensing process unless and until an exemption application is finally approved. The Commission's own regulations provide that the accepted preliminary permit application of a person, who later applies for an exemption, retains its validity and priority until the preliminary permit application is withdrawn or the project receives an exemption. 18 C.F.R. Sec. 4.104(b). We can see no rhyme or reason for ignoring these regulations when the two applications are filed simultaneously.
 
 
 23
 To preserve Phoenix's priority in its preliminary permit application, the Commission must provide Phoenix with the priority in licensing proceedings that it would have had if it had filed only its preliminary permit application and no application for an exemption. Phoenix's preliminary permit application should be reinstated as of the date it was filed.
 
 CONCLUSION
 
 24
 When Congress allows an exemption from a standard licensing procedure, the licensing agency may not dilute the allowance by forcing the applicant to elect to pursue either the exemption or the procedure. Imposing such a dilemma on an applicant serves no public purpose. The Commission's withdrawal of Phoenix's preliminary permit application, even though accomplished in connection with a denial of an exemption that we hold to be proper, exceeds the Commission's mandate under its enabling statute. The Commission must allow applicants to engage in campaigns for both an exemption and a license, as Congress has specified. We therefore remand the case to the Commission to reinstate Phoenix's preliminary permit application as of September 2, 1981. The decision of the Commission is affirmed in part and remanded for further proceedings in accordance with this opinion.
 
 
 25
 It is so ordered.
 
 
 
 *
 Judge Tamm had fully concurred in the result of this case prior to his death